UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIA ANGUIANO,<br>　　　　Plaintiff,<br>　　v.<br>MANN PACKING CO., INC.,<br>　　　　Defendant. | Case No.19-cv-02133-VKD<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>Re: Dkt. No. 17 |

Plaintiff Maria Anguiano moves to remand this action on the ground that the Court lacks federal subject matter jurisdiction. Dkt. No. 17. The Court heard oral argument on Ms. Anguiano's motion on June 25, 2019. Dkt. No. 28.

All parties have consented to magistrate judge jurisdiction. Dkt. Nos. 12, 13. Having considered the parties' moving papers and arguments made at the hearing, the Court grants Ms. Anguiano's motion to remand.

## I.　BACKGROUND

Ms. Anguiano works as a laborer in defendant Mann Packing Co., Inc.'s ("Mann Packing") foodservice plant. Dkt. No. 1-1 ¶ 8. She has worked for Mann Packing since October 19, 1995. *Id.* Ms. Anguiano says that throughout her employment, Mann Packing often assigned her multiple job duties and paid her at different rates based on the tasks performed. *Id.* ¶ 22. When she worked overtime, Mann Packing did not correctly calculate her overtime wages, which should have been based on an average of the regular rates of pay that she received during that pay period. *Id.* As a result of that miscalculation, Ms. Anguiano was not paid overtime wages at the correct rate of pay, and her wage statements did not list the correct rate of pay for overtime wages. *Id.*

Ms. Anguiano also says that she was required to pick up her paycheck and wage

statements during her meal breaks, which deprived her of the full meal break period. *Id.* Additionally, she says she was not provided with a duty-free rest break of at least 10 minutes for shifts of 3.5 hours or longer. *Id.*

On March 20, 2019, Ms. Anguiano filed a class action lawsuit in state court asserting the following claims: (1) failure to pay overtime wages for hours worked in violation of California Labor Code §§ 510 and 1194; (2) failure to provide off-duty meal periods in violation of California Labor Code §§ 226.7, 1174, 1198, and 1199; (3) failure to provide off-duty rest periods in violation of California Labor Code § 226.7; (4) failure to provide accurate itemized wage statements in violation of California Labor Code § 226; (5) unfair business practices in violation of California Business and Professions Code § 17200 et seq.; and (6) damages for the above violations of the California Labor Code under the Private Attorneys General Act of 2004, California Labor Code § 2698 et seq. Dkt. No. 1-1 ¶¶ 29-58.

Mann Packing removed the action to federal court on April 19, 2019, asserting federal question jurisdiction based on preemption under section 301 of the Labor Management Relations Act ("LMRA"), 28 U.S.C. § 185. Dkt. No. 1. The LMRA provides for federal question jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization" that represents certain eligible employees. 28 U.S.C. § 185(a). In its notice of removal, Mann Packing alleges that, during the relevant time period, Ms. Anguiano and Mann Packing's other non-exempt employees were subject to a valid collective bargaining agreement ("CBA") and that Ms. Anguiano's claims depend on an analysis of that CBA.[1] Dkt. No. 1 at 1–2; Dkt. No. 2, Ex. A.

After removal, Ms. Anguiano filed an amended complaint. Dkt. No. 19. However, for purposes of this motion, the Court considers only the complaint as it existed at the time of removal. *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 390 (1998) (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 291 (1938)).

---

[1] For the purposes of resolving this motion only, the Court assumes that Ms. Anguiano and the other aggrieved employees are parties to a valid collective bargaining agreement.

## II. LEGAL STANDARD

Removal is proper where the federal courts have original jurisdiction over an action brought in state court. 28 U.S.C. § 1441(a). Courts strictly construe the removal statute against removal. *E.g.*, *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *Luther v. Countrywide Home Loans Servicing*, LP, 533 F.3d 1031, 1034 (9th Cir. 2008). "A defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability." *Luther*, 533 F.3d at 1034 (citation omitted); *see also Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) ("[A]ny doubt about the right of removal requires resolution in favor of remand.").

Under 28 U.S.C. § 1331, federal courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." "In determining the existence of removal jurisdiction, based upon a federal question, the court must look to the complaint *as of the time the removal petition was filed*. Jurisdiction is based on the complaint as originally filed and not as amended." *Abada v. Charles Schwab & Co.*, 300 F.3d 1112, 1117 (9th Cir. 2002) (quoting *O'Halloran v. Univ. of Wash.*, 856 F.2d 1375, 1379 (9th Cir. 1988)) (emphasis original) (internal quotation marks omitted). Removal pursuant to section 1331 is governed by the "well-pleaded complaint rule," which provides that federal question jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). There exists, however, an "independent corollary" to the well-pleaded complaint rule, known as the doctrine of complete preemption. *Id.* at 393 (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983)). Through complete preemption, certain "extraordinary" federal statutes "convert[] an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987). LMRA section 301 is a federal statute with complete preemptive force: if the statutory criteria are met, section 301 will completely preempt claims that are pled exclusively as state law causes of action. *See Caterpillar*, 482 U.S. at 393.

3

## III. DISCUSSION

The issue before this Court is whether LMRA section 301 preempts Ms. Anguiano's state law claims such that original federal question jurisdiction exists to support the removal of this case from state court.

LMRA section 301 completely preempts only claims "founded directly on rights created by collective-bargaining agreements" or "'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar*, 482 U.S. at 395 (quoting *Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987)). It is not enough that the "state law cause of action is conditioned on some term or condition of employment that was collectively bargained." *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 916 (9th Cir. 2018). Section 301 preemption exists "only where a state law claim arises entirely from or requires construction of" a CBA. *Id.* at 914.

The Ninth Circuit has developed a two-step test to determine whether a state law claim satisfies either of these preemption requirements. *Id.* at 920 (citing *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059–60 (9th Cir. 2007)). First, the court evaluates the "legal character" of the claim by asking "whether [the claim] seeks purely to vindicate a right or duty created by the CBA itself." *Id.* at 921 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). If it does, the claim is preempted. If not, the court then asks "whether litigating the state law claim nonetheless requires interpretation of a CBA . . . ." *Id.*

Ms. Anguiano argues that none of her state law claims satisfy the *Burnside* test for preemption. Mann Packing contends that section 301 preempts Ms. Anguiano's first, fourth, and fifth claims and that the Court may exercise supplemental jurisdiction over her remaining claims. Dkt. No. 24 at 10, 12. The parties agree that the fourth and fifth claims for inaccurate wage statements and unfair business practices are derivative of the first claim for overtime pay violations under California Labor Code §§ 150 and 1194.[2] Dkt. No. 17 at 13; Dkt. No. 24 at 12. Accordingly, the Court need only analyze whether section 301 preempts the first claim. *See Peters v. RFI Enters., Inc.*, No. 18-cv-02771-BLF, 2018 WL 3869565, at *3 (N.D. Cal. Aug. 15,

---

[2] Section 510 defines a regular workday and a regular workweek, and specifies how overtime must be compensated. Section 1194 specifies the recovery available to an employee for an overtime pay violation.

4

2018); *accord Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 964 (C.D. Cal. 2014).

### A. Whether the Claim Seeks to Vindicate a Right Created by the CBA

At the first step of the *Burnside* test, the Court "evaluates the 'legal character' of the claim by asking whether it seeks purely to vindicate a right or duty created by the CBA itself." *Alaska Airlines*, 898 F.3d at 920–21 (quoting *Livadas*, 512 U.S. at 123).

Ms. Anguiano argues that her state law claims seek to vindicate rights conferred by state law, independent of the CBA. She argues that all of her claims are "based on substantive non-waivable rights under state law." Dkt. No. 17 at 13–14. She further argues that to the extent Mann Packing seeks to assert an affirmative defense based on the terms of the CBA or based on California Labor Code § 514 (which creates an exception to the requirements of Labor Code § 510), such an affirmative defense cannot establish LMRA section 301 preemption under Ninth Circuit governing precedent.[3] *Id.* at 14 (citing *Alaska Airlines*, 898 F.3d at 921; *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001)).

Mann Packing does not oppose remand on the basis that Ms. Anguiano's claims are based solely on a right or duty created by the CBA. Instead, its opposition focuses solely on whether her claims require interpretation of the CBA.

### B. Whether the Claim Requires Interpretation of the CBA

Even where a CBA does not create the right at issue, LMRA section 301 may still preempt a state law claim when "litigating the state law claim . . . requires interpretation of a CBA." *Alaska Airlines*, 898 F.3d at 921. That is, a state law claim may be preempted where it is "substantially dependent" upon an analysis of the CBA. *Burnside*, 491 F.3d at 1060. The term "interpretation" in this context is "construed narrowly" and "means something more than 'consider,' 'refer to,' or 'apply.'" *Alaska Airlines*, 898 F.3d at 921 (quoting *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000) (internal quotation marks omitted)). For the claim to be preempted, there must be an "active dispute" over the meaning of the CBA's

---

[3] Mann Packing has not answered the complaint and has not yet asserted any affirmative defenses.

5

terms. *Id.* "The need for a purely factual inquiry" that "does not turn on the meaning of any provision of a collective bargaining agreement . . . is not cause for preemption" under section 301. *Burnside*, 491 F.3d at 1072 (quotation omitted); *see also Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988) ("Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement.").

Ms. Anguiano argues that her California Labor Code § 510 claim is not "substantially dependent" on the CBA's terms and that the Court need not interpret the CBA to resolve that claim. Dkt. No. 17 at 17–19. She says that, at the most, the Court need merely refer to the CBA to identify Ms. Anguiano's regular rate of pay as the basis for calculating what Mann Packing owed her for overtime. *Id.* at 18. At the hearing, Ms. Anguiano explained that the essence of her overtime claim is not that Mann Packing failed to pay her at the regular rate for regular hours worked, but rather that Mann Packing incorrectly calculated the overtime pay she was owed under California Labor Code § 510 based on the applicable regular rates for the different positions she worked at different times. She analogizes this case to *Controulis v. Anheuser-Busch*, No. CV 13-07378 RFK, 2013 WL 6482970, at *2 (C.D. Cal. Nov. 20, 2013), where the court determined the claim was not substantially dependent on the CBA because the CBA "explicitly provide[d]" for how to calculate the overtime rate, including by providing a definition of the regular hourly rate. Dkt. No. 17 at 18–19. The pertinent issue, Ms. Anguiano says, "is not *how* the overtime rate is calculated, which is undisputed, but whether the calculation violates California law." *Id.* at 18 (quoting *Controulis*, 2013 WL 6482970, at *6) (internal quotation marks omitted).

Mann Packing opposes remand on the ground that Ms. Anguiano's overtime claim requires interpretation of multiple terms in the CBA. Dkt. No. 24 at 8–9. The Court separately addresses each term that Mann Packing contends requires interpretation.

### 1. "Straight-time hourly base rate of pay"

First, Mann Packing says that the term "straight-time hourly base rate of pay" requires interpretation. That term appears in the CBA's Article XIII concerning hours and overtime. Specifically, Section 13.01 ("Overtime Rates") states in its entirety:

6

> a. The Company will pay employees at an overtime rate of one and a half (1 ½ times the employee's straight-time hourly base rate of pay for all hours actually worked over eight (8) in one work day or over forty (40) in one payroll week. The payroll week will run from 12:01 a.m. Sunday – 12:00 a.m. Midnight Saturday. Employees will be paid the Friday following the end of the payroll week.
>
> b. For all hours worked on Sunday, the Company will pay employees at a rate equal to one and one half (1 ½) times the employee's straight time hourly based rate of pay.

Dkt. No. 2, Ex. A at 17–18. Mann Packing argues that because the CBA does not explicitly define the term "straight-time hourly base rate of pay," the Court would need to examine extrinsic evidence to interpret the CBA's overtime provision. Dkt. No. 24 at 8. Ms. Anguiano responds that there is no dispute that "straight-time hourly base rate of pay" must be understood with reference to Section 15.01 and Exhibit A of the CBA, which sets forth the applicable hourly rates for employees by position. Dkt. No. 17 at 19; *see also* Dkt. No. 25 at 2, 5–7.

At the hearing, the Court sought clarification from the parties regarding whether there was, in fact, an active dispute about the meaning of "straight-time hourly base rate of pay" and whether it meant anything other than the wage rates listed in Exhibit A to the CBA. Based on that colloquy, the Court is not persuaded that an active dispute exists regarding the meaning of this term. Dkt. No. 29. The Court rejects Mann Packing's suggestion that the absence of an express definition for a term used in a CBA necessarily creates such a dispute. *See, e.g.*, *Peters*, 2018 WL 3869565 at *6 (finding no preemption where CBA included undefined terms such as "regular rate," "shift hourly rate," and "straight time rate").

Mann Packing argued at the hearing that Ms. Anguiano disputes not only the calculation of her overtime rate of pay, but also the calculation of the regular rate of pay on which the overtime calculation is based. The complaint does indeed refer to this theory of liability: "[w]hen Plaintiff and Class Members worked overtime, however, Defendants failed to calculate and/or factor the different rates of pay (for those employees with multiple job duties) into the regular rate of pay for purposes of calculating increased overtime pay." Dkt. No. 1-1 ¶ 31. However, this theory of liability does not compel the conclusion that resolution of Ms. Anguiano's California Labor Codes § 510 claim requires *interpretation* of the CBA, as opposed to *reference* to the different wage rates

it sets out for each position. Dkt. No. 2, Ex. A. "Mere reference to the CBA is not enough to find the claim substantially dependent on the CBA." *Peters*, 2018 WL 3869565, at *6; *see also Alaska Airlines*, 898 F.3d at 921.

### 2. "Combination job"

Second, Mann Packing argues Ms. Anguiano's claim requires interpretation of the term "combination job." Dkt. No. 24 at 8. That term appears in Section 14.01 ("Wage Rates for Combination Jobs"), which states:

> When an employee is required to perform a combination job, the wage rate shall be determined by mutual agreement between the Union and the Company. A combination job is one in which the employee is required to perform the work requirements of two or more job classifications resulting in a material increase to the work load.

Dkt. No. 2, Ex. A at 19. Mann Packing says that resolution of Ms. Anguiano's overtime claim requires the Court to determine what job functions she and other class members performed, what job classification those duties fell under, whether the job was a "combination job," and, if so, what the wage rate was for that particular job. Dkt. No. 24 at 8. Ms. Anguiano insists that she does not allege that she ever was required to perform a "combination job." Dkt. No. 25 at 4. Rather, she says she was assigned multiple job duties at different times for which she should have been paid different hourly rates—not that she was required to perform the duties of different positions in combination simultaneously such that her work load increased materially. *Id.*; Dkt. No. 1-1 ¶¶ 22, 31. Ms. Anguiano contends that Mann Packing incorrectly calculated the overtime pay she was owed under California Labor Code § 510 based on the applicable regular rates for the different positions she worked at different times, and that the Court need not interpret the term "combination job" or the rate applicable to a "combination job." Dkt. No. 25 at 4–5. Thus, whether Ms. Anguiano worked a "combination job" is not in dispute.

Having considered both of Mann Packing's arguments regarding the provisions of the CBA that it believes require interpretation, the Court concludes that Mann Packing has not shown that resolution of Ms. Anguiano's claim requires an interpretation of the CBA.[4]

---

[4] If Ms. Anguiano's arguments shift during the course of the litigation, Mann Packing would have

8

### C. *Blackwell* and *McKinley*

Mann Packing urges the Court to follow two district court decisions that pre-date the Ninth Circuit's *en banc* decision in *Alaska Airlines*: *Blackwell v. SkyWest Airlines, Inc.*, No. 06cv0307 DMS (AJB), 2008 WL 5103195 (S.D. Cal. Dec. 3, 2008), and *McKinley v. Southwest Airlines Co.*, No. CV 15-02939-AB (JPRx), 2015 WL 2431644 (C.D. Cal. May 19, 2015).[5]

In *Blackwell*, the issue of preemption arose on summary judgment. 2008 WL 5103195 at *1. The district court reached the preemption issue only after resolving a disputed issue about whether certain agreements between the parties constituted a CBA. *Id.* at *9. Having concluded that the plaintiff's employment was covered by a CBA, the court then determined that the plaintiff's claims depended on complex calculations that "necessarily require[] an interpretation of the CBA's provisions." *Id.* at *12. *Blackwell* is distinguishable at least on this basis, as Mann Packing has not demonstrated that any terms of the CBA will require interpretation in order to resolve the dispute about calculation of Ms. Anguiano's overtime pay.

In *McKinley*, the preemption question arose on a motion to dismiss. 2015 WL 2431644 at *1. Over the plaintiff's objection, the district court considered the defendant's extrinsic evidence that plaintiff's employment was covered by a CBA. *Id.* at *3–4. As in *Blackwell*, the court determined that the plaintiff's claims required interpretation of multiple provisions of the CBA, including whether those provisions defined categories of remuneration that should be excepted from the regular rate of pay defined by statute. *Id.* at *5–6. *McKinley*, like *Blackwell*, is distinguishable on this basis from Ms. Anguiano's claim here, where no such interpretations is required.

### IV. CONCLUSION

Given the applicable legal standard, including the directive to strictly construe removal jurisdiction, the Court finds that Mann Packing has not demonstrated that resolution of Ms.

---

the opportunity to again seek removal. *See McCray v. Marriott Hotel Services, Inc.*, 902 F.3d 1005, 1016 n.3 (9th Cir. 2018).

[5] *Blackwell* and *McKinley* dealt with preemption under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq. The RLA and LMRA section 301 preemption standards are "virtually identical" in purpose and function, and thus courts analyze them under a single test and body of case law. *Alaska Airlines*, 898 F.3d at 913–14, n.1.

Anguiano's state law claims requires an interpretation of the CBA, such that the claims substantially depend on resolution of an active dispute concerning the meaning of any such terms. Accordingly, Ms. Anguiano's claims are not preempted under LMRA section 301 and cannot serve as the basis for federal question jurisdiction. The Court therefore grants Ms. Anguiano's motion to remand.

The Clerk of the Court shall REMAND this case to the Superior Court of California for the County of Monterey. All other pending motions and hearings are TERMINATED and VACATED. The Clerk of the Court shall close the file.

**IT IS SO ORDERED.**

Dated: July 8, 2019

VIRGINIA K. DEMARCHI
United States Magistrate Judge